UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PAMELA PATTERSON, on behalf of herself and others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) JTH TAX, INC., a Delaware corporation, ) ) ) Defendant. ) ) | Case No: Class Action Complaint JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Pamela Patterson ("Plaintiff"), on behalf of herself and all others similarly situated, filing Plaintiff's Original Class Action Complaint against Defendant JTH Tax, Inc., d/b/a Liberty Tax Services ("Defendant"). Plaintiff seeks certification of her claims against Defendant as a class action. Plaintiff alleges, based on personal knowledge as to Defendant's action and upon information and belief as to all other matters, as follows:

### I.  PARTIES.

1.  Plaintiff Pamela Patterson is a Florida citizen residing at 5161 NE 18th Ave., Fort Lauderdale, Florida in the Southern District of Florida. Plaintiff had her taxes prepared at an office of Defendant located at 1309 East Commercial Blvd., Oakland Park, Florida in the Southern District of Florida. Defendant facilitated a Refund Anticipation Loan for Plaintiff during the class period as described below.

2.  Defendant, JTH Tax, Inc. d/b/a Liberty Tax Services is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, and can be served through its registered agent Registered Agent Solution, Inc.,

1679 S. Dupont Highway, Suite 100, Dover, Delaware 19901.  Defendant provides tax preparation services through more than 3,800 offices in the United States and Canada, with over two hundred offices in Florida, all doing business under the name Liberty Tax Services.

## II.   JURISDICTION AND VENUE.

3. This Court has jurisdiction over Defendant since at all relevant times Defendant has regularly and systematically transacted business within the State of Florida as a provider of tax return preparation services and other services.  Defendant derives substantial revenue from Florida residents.

4. This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act ("CAFA") because there are more than one hundred class members, all of the members of the class are citizens of a state (Florida) different from that of Defendant, and the aggregate of class members' claims is more than $5 million.  28 U.S.C. § 1332(d).

5. Venue is proper in this Court because the tax preparation services and loan marketing and facilitation giving rise to Plaintiff's claims occurred in this District.  28 U.S.C. § 1391(b)(2).  Venue is also proper in this Court because the Defendant has numerous offices in this District.  28 U.S.C. § 1391(b)(1).

## III.   FACTS.

### A.   DEFENDANT AGGRESSIVELY MARKETS AND FACILITATES REFUND ANTICIPATION LOAN PRODUCTS AT EXORBITANT TRIPLE-DIGIT INTEREST RATES TO THE WORKING POOR AND MINORITIES.

6. Refund Anticipation Loans ("RAL") are short-term loans or extensions of credit that are secured and repaid directly from the consumer's IRS tax refunds.  These loans are marketed, arranged and facilitated by for-profit tax preparers such as Defendant in coordination

with banking entities that provide the loan and banking products. RALs include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act, often exceed 100% APR.

7. Although a significant profit source to Defendant and other for-profit tax preparers, and a fundamental part of their business models, these aggressively marketed bank products provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings. Tax filers can usually get their federal tax refund in 8 to 15 days by direct deposit, without getting a loan or paying any extra fees to companies like Defendant. The IRS usually issues refunds by check within 21 to 28 days.

8. The Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[1] Across the U.S., just 20% of all communities account for nearly 70% of all RALs.[2] Defendant and other tax preparers target these high-interest-rate loans to minorities and the working poor, particularly those who receive the Earned Income Tax Credit (EITC). The median adjusted gross income among RAL consumers is $19,768.[3] In 2008, although only 17% of tax filers received the EITC, EITC claimants comprised 64% of RAL consumers. Viewed another way, 33% of EITC claimants purchased a RAL, compared to only 3% of non-EITC claimants.[4]

9. Defendant aggressively markets RALs to its customers for whom it provides tax preparation services, as these predatory bank products are a critical part of its business model. In

---

[1] "Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks," U.S. Department of Treasury, 2010, at p. 1.
[2] Id. at p. 17-20.
[3] Id. at 16.
[4] Id. at 13.

3

2009, about 74% of Defendant's customers obtained a RAL.[5] Within the general population, by comparison, less than 15% of tax filers opted for these products. This is not mere coincidence. Defendant aggressively markets RALs to the working poor so that a significant portion of the EITC goes to Defendant rather than the intended beneficiaries. Fees from these predatory bank products accounted for 28% of Defendant's revenue in 2009, according to Defendant's Consolidated Financial Statement for 2010.

### B.   DEFENDANT'S ILLEGAL CONDUCT.

10.   Throughout the Class Period, Defendant has facilitated RALs through an arrangement with Republic Bank and Trust Co. ("Republic Bank"), a state-chartered bank based in Kentucky. Defendant marketed and facilitated two types of bank products: (a) Electronic Refund Check ("ERC") or Electronic Refund Deposit ("ERD"), and (b) Refund Anticipation Loan ("Republic RAL").

11.   Defendant has a high percentage of low-income customers and customers who receive the EITC. In addition, as set forth above, Defendant has a high percentage of customers who purchase the Republic RAL, ERC and ERD bank products. Many of Defendant's customers cannot afford to pay Defendant's fees for tax preparation services out-of-pocket. A key component to Defendant's marketing campaign is that there is no up-front cost to the customer. Although generally Defendant requires fees for tax preparation services to be paid at the time the customer's taxes are prepared, Defendant provides the option of deferring payment of those fees until the tax refund has been received from the IRS if the customer purchases a Republic RAL, an ERC or an ERD. In the case of a Republic RAL, tax preparation fees are deducted from the

---

[5] National Consumer Law Center/Consumer Federation of America's "2011 Refund Anticipation Loan Report" at p. 22.

loan funds when the loan is provided.  In the case of an ERC or ERD, the tax preparation funds are deducted from the refund amount.  On information and belief, this component of these bank products expands the market for Defendant's tax preparation services, increases the amount that can be charged for tax preparation services, and increases the franchise fees and royalties collected by Defendant.

### 1. ERCs/ERDs.

12. During the Class period, Defendant, through its franchise offices, facilitated ERCs/ERDs to its tax preparation customers (including the plaintiff and all Class members), following common practices and procedures and using uniform forms, applications and disclosures as described below.  Each bank product entails the establishment of a "Deposit Account" at Republic Bank.  The Deposit Account is a non-interest-bearing "account" established for the sole purpose of receiving the consumer's federal and/or state tax refund and disbursing those funds in a limited manner controlled by Republic Bank.

13. The consumer cannot make any other deposits to this dummy account or direct any other withdrawals.  When the consumer's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the consumer may be entitled.  Once the IRS is notified, the refund destination cannot be changed.  If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon Defendant's tax preparation services, the consumer is still held liable for the full amount of the loan.

14. When the consumer's tax refund is deposited into the account, Republic Bank first disburses the funds to pay, among other things:

      (a)    "Bank Fees" to itself, some of which also are received by Defendant, including $29.95 minimum payment of a "Tax Refund Administration Fee," and, for the 2009 tax year, an additional $10.00 "Administration Fee" if a state tax refund is directed to the Deposit Account;

      (b)    any and all debts due to Defendant to pay for tax preparation services; and

      (c)    any and all other debts to Republic Bank including, for example, debts related to bank products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

    15.    ERCs and ERDs are bank products of little to no value at an exorbitant finance charge.

    16.    ERCs and ERDs are encompassed by RALs, as they are extensions of credit by Defendant of the fee for tax preparation services, which otherwise would be due at the time the services were provided. With an ERC/ERD, Defendant grants deferral of payment for approximately 12 days (the time period needed to receive the tax refund). Defendant provides no disclosure of the **triple-digit** interest rate or finance charge for the ERC/ERD bank products in violation of TILA and the FDUPTA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville*

6

*Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

17. Defendant receives a portion of the bank fees. Republic's "Bank Product Application and Agreement" acknowledges that a portion of the Tax Refund Administration Fee and/or Administration Fee are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such bank fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these bank products.

### 2. **Republic RALs.**

18. During the Class period, Defendant facilitated Republic RALs to its tax preparation customers, following common practices and procedures and using uniform forms, applications and disclosures as described below. As with an ERC/ERD, a Republic RAL entails the establishment of a dummy "Deposit Account" at Republic Bank. The consumer receives the RAL loan funds one or two days after his or her taxes are prepared and filed. Prior to the 2010 tax year, the loans were between $300 and $7,500. For the 2010 tax year, the loans were for a set amount of $1,561.22. When the consumer's tax refund is deposited into the account, Republic Bank first disburses the funds to pay, among other things:

    (a)    "Bank Fees" to itself, some of which are also received by Defendant, including: (i) $29.95 minimum payment of the "Tax Refund

7

        Administration Fee;" (ii) what Republic terms the "finance charge" (*e.g.*, 0.78% of the loan amount for the 2009 tax year and set amount of $16.22 for the 2010 tax year); (iii) in the 2010 tax year only, a $45.00 "Credit Investigation Fee;" and (iv) in some instances a $10.00 "Administrative Fee" for state tax refunds.

    (b)    any and all debts due to Defendant to pay for tax preparation services;

    (c)    the debt for the RAL; and

    (d)    any and all other debts to Republic Bank including, for example, debts related to bank products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

    19.    With the Republic RALs marketed and facilitated by Defendant, Defendant misrepresented the finance charge by not including the Tax Refund Administration Fee (and where relevant the Administration Fee for state tax refunds) in the calculation of the finance charge, in violation of TILA and the FDUPTA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

20.     Moreover, Defendant receives a portion of the bank fees and finance charges. Republic's "Bank Product Application and Agreement" acknowledges that a portion of the fees from its bank products (ERC/ERD and Republic RAL) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such bank fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these bank products.

### C.     FACTUAL ALLEGATIONS AS TO PLAINTIFF PAMELA PATTERSON.

21.     Ms. Patterson's experience for the 2010 tax year is exemplary. Ms. Patterson had her 2010 taxes prepared at a Liberty Tax Service location on January 27, 2011. Defendant estimated Ms. Patterson's refund to be $3,429.

22.     Defendant's tax preparation fee for these services was $371.[6] Ms. Patterson did not pay the fee at the time, but deferred payment to be taken out of her tax refund, which was to be direct deposited into a one-transaction dummy account (Deposit Account) at Republic Bank.

23.     Defendant charged Ms. Patterson $29.95 to set up a Deposit Account to which the IRS deposited the tax refund of $3,429. Upon information and belief, Ms. Patterson received an electronic refund check from Defendant approximately 12 days after her return was filed.

24.     Ms. Patterson purchased a Republic RAL, which entitled her to a 12-day loan of the Defendant's tax preparation fee ($371), plus Defendant's "transmitter fee" ($20). Thus the total amount financed (principal) was $391.

25.     The finance charge included the Tax Refund Administration Fee ($29.95).

26.     Thus Ms. Patterson paid $29.95 in finance charges for a 12-day loan of $391.

---

[6] This is an unconscionably high rate in and of itself for tax preparation services of this nature.

9

27.     Defendant failed to provide any disclosure regarding the APR or finance charges regarding this loan.

## IV.    CLASS ACTION ALLEGATIONS.

### A.    CLASS DEFINITION.

28.     Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b, Plaintiff brings this action for herself and on behalf of a class defined as:

> All natural persons residing in the State of Florida who, after November 17, 2007 (a) received an Electronic Refund Check (ERC) or Electronic Refund Deposit (ERD) facilitated by Defendant and Defendant's tax preparation fees were deducted from the Deposit Account established for the ERC or ERD, or (b) received a Republic RAL facilitated by Defendant.

29.     Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

### B.    RULE 23(A) PREREQUISITES.

30.     **Numerosity.**  The Class is so numerous that joinder of all members is impracticable.  At this time, Plaintiff does not know the exact size of the Class.  Based on information and belief, the Class is comprised of at least thousands of members so as to render joinder of all Class Members impracticable.

31.     **Commonality.**  Common questions of law and fact predominate over individual issues.  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate

over questions affecting only individual Class members, and include, but are not limited to, the following:

    a.    Whether Defendant calculated interest rates using the guidelines established under the federal Truth in Lending Act;

    b.    Whether Defendant failed to abide by the written disclosure requirements of TILA as relates to interest rates;

    c.    Whether violations of TILA constitute violations of FDUPTA;

    d.    Whether Defendant disclosed to consumers for which it facilitated ERCs, ERDs and Republic RALs the interest rate, calculated as required by TILA, and if not, whether such failure violated FDUPTA; and

    e.    Whether Defendant provided any disclosure of the interest rate for ERCs or ERDs it facilitated to consumers in Florida during the Class Period, and if not, whether such failure violated FDUPTA.

32.    **Typicality.**  Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant uses common practices, applications, forms and disclosures in committing the conduct that Plaintiff alleges damaged her and the Class Members. Defendant uniformly violated FDUPTA by engaging in the conduct as described above, and these violations had the same effect on each member of the Class.

33.    **Adequacy.**  Plaintiff is an adequate representative of the Class because she fits within the class definition and her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff will prosecute this action vigorously for the benefit of the entire Class. Plaintiff is represented by experienced and able attorneys. Class counsel have litigated numerous class actions and complex cases, and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and class counsel can and will fairly and adequately protect the interests of all of the members of the Class.

11

    **C.**    **RULE 23(B) PREREQUISITES.**

34. Questions of law and fact common to the Class predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to effectively redress the wrongs done to them on an individual basis. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

35. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**V.**    **CAUSES OF ACTION.**

    **A.**    **FIRST CAUSE OF ACTION: VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES LAW.**

36. Plaintiff incorporates by reference each of the foregoing allegations.

37. Plaintiff and the Class are "consumers" within the meaning of Part II of Chapter 501, Florida Statutes, relating to Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

38. Pursuant to FDUTPA, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

12

39. Within four years prior to the filing of this complaint and continuing to the present, Defendant, in the course of trade and commerce, engaged in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiff and the Class, as described herein.

40. In addition to protecting individuals from unfair competition and/or deceptive trade practices, FDUTPA has an additional goal of making Florida's consumer protection and enforcement consistent with the established policies of federal law relating to consumer protection.

41. The federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, are laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, and a violation thereof is a violation of FDUTPA.

42. Violations of TILA are determined on an objective standard, based on the representations in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular consumers.

43. Defendant is a creditor and Plaintiff and Class Members are consumers for purposes of TILA.

44. Finance charges within the meaning of TILA include fees and amounts charged by third parties where the contracting party requires the use of a third party or where the creditor retains a portion of the third-party charge.

45. The Tax Refund Administration Fee charged to recipients of ERCs, ERDs and Republic RALs constitutes a "finance charge" (for deferral of tax preparation fees) within the meaning of TILA, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4.

46. Defendant failed to disclose an interest rate calculated utilizing the guidelines established under TILA by failing to consider the Tax Refund Administration Fee a finance charge.

47. For each ERD/ERD customer, Defendant failed to disclose any interest rate or finance charge, thus violating the written disclosure requirements of TILA.

48. For each Republic RAL customer, Defendant failed to accurately disclose the interest rate, because it did not include the Tax Refund Administration Fee as part of the finance charge, which violates the written disclosure requirements of TILA.

49. By violating TILA, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating FDUTPA.

50. As a direct and proximate result of the aforementioned acts, Defendant unfairly and improperly received monies and continues to hold the monies belonging to Plaintiff.

51. The harm to Plaintiff outweighs the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of FDUTPA.

52. The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's Bank Products as described herein.

53. As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost money. Plaintiff and members of the Class are direct victims of the Defendant's unlawful conduct, and each have suffered injury in fact, and

have lost money and/or property as a result of Defendant's unfair and deceptive acts and practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in favor of herself and the Class for the following:

    a.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that Plaintiff is a proper class representative; and that the best practicable notice of this action be given to members of the Class represented by Plaintiff;

    b.    That judgment be entered against Defendant and in favor of Plaintiff and the Class on the Plaintiff's FDUTPA claim, for actual and consequential damages, equitable relief, including restitution, restitutionary disgorgement.

    c.    That Defendant be permanently enjoined from its unfair, fraudulent and deceitful activity.

    d.    That judgment be entered imposing interest on damages;

    e.    That judgment be entered imposing litigation costs and attorneys' fees under Plaintiff's FDUPTA claim; and

    f.    For all other and further relief, including equitable relief, as this Court may deem necessary and appropriate.

**JURY TRIAL DEMANDED**

November 17, 2011                                         Respectfully submitted,

                                          Brian T. Ku, Esq. (Fla. # 610461)
                                          Louis I. Mussman, Esq. (Fla. # 597155)
                                          M. Ryan Casey, Esq.
                                          **KU & MUSSMAN, P.A.**
                                          12550 Biscayne Blvd., Suite 406
                                          Miami, Florida 33181
                                          Tel:  (305) 891-1322
                                          Fax:  (305) 891-4512
                                          ryan@kumussman.com

Of Counsel:

Hank Bates
Randall K. Pulliam
Darrin L. Williams
**CARNEY WILLIAMS BATES**
    **PULLIAM & BOWMAN, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel:  (501) 312-8500
Fax:  (501) 312-8505
hbates@carneywilliams.com

Richard M. Golomb, Esq.
Ruben Honik, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK**
1515 Market St., #1100
Philadelphia, Pennsylvania 19102
Tel: (215) 985-9177
Fax: (215) 985-4169
kgrunfeld@golombhonik.com

                                          BY:  /s/ Brian T. Ku

                                          *Counsel for Plaintiff and Proposed Class*